UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN GOLD EXCHANGE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-00049 |
| | § | |
| SHAOLIN GRIFFIN, individually, and as the putative successor trustee of the Patricia Griffin Revocable Trust, BAHATI GRIFFIN, and the UNNAMED PERSONAL REPRESENTATIVE OF THE ESTATE OF PATRICIA ANNE GRIFFIN, DECEASED, | § § § § § § § | |
| Defendants. | § | |

**COMPLAINT IN INTERPLEADER BY AMERICAN GOLD EXCHANGE, INC.**

Plaintiff, American Gold Exchange, Inc., by and through its undersigned counsel, for its Complaint in Interpleader pursuant to Rules 22 and 67, F. R. Civ. P., and 28 U.S.C. § 1335, alleges as follows:

**PARTIES**

1. Plaintiff, American Gold Exchange, Inc. ("AGE"), is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Austin, Texas. AGE is duly authorized to do business in the State of Texas.

2. Defendant SHAOLIN GRIFFIN ("Shaolin") is an adult resident of Middletown, New York and a citizen of the State of New York. Shaolin may be served with process at 30 Magnolia Park Road, Middletown, NY 10940. Shaolin is served in her individual capacity, and as the putative successor trustee of the Patricia Griffin Revocable Trust dated January 17, 2006.

3. Defendant BAHATI GRIFFIN ("Bahati") is, upon information and belief, an adult resident of Brooklyn, NY, and a citizen of the State of New York. Bahati may be served with process at 29 Avenue W, Apt. 8A, Brooklyn, NY 11223.

4. Defendant UNNAMED PERSONAL REPRESENTATIVE OF THE ESTATE OF PATRICIA ANNE GRIFFIN, DECEASED is, upon information and belief, a citizen of the State of Arizona, where Patricia Anne Griffin ("Patricia") died, and can be served with process in care of the Pima County Public Fiduciary, Attn: Amy Hubbell, Staff Attorney, 32 N. Stone Avenue, 4th Floor, Tucson, AZ 85701.

**JURISDICTION AND VENUE**

5. This court has jurisdiction pursuant to 28 U.S.C. § 1332, in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000. Plaintiff is a Texas citizen for diversity purposes, and upon information and belief, the Defendants are citizens of New York and Arizona, for diversity purposes.

6. This court also has jurisdiction pursuant to 28 U.S.C. § 1335, in that the adverse claimants are of diverse citizenship and the amount in controversy exceeds $500. Upon information and belief, the potential adverse claimants are citizens of New York and Arizona.

7. Venue is proper in this federal district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the controversy described herein occurred in this district and the property that is the subject of this action is located in this district.

**CAUSE OF ACTION IN INTERPLEADER**

8. Patricia died in Pima County Arizona on September 24, 2021. A copy of Patricia's Redacted Death Certificate is attached as Exhibit A. At the time of Patricia's death, AGE had in its possession the following property ("670 Gold Coins") that belonged to Patricia:

> 70 pieces – South African gold Krugerrand coins (1 oz. each); and
> 600 pieces – Swiss gold 20 Franc coins (0.1867 oz. each).

9. Patricia delivered these coins to AGE on August 31, 2020 and September 1, 2020. It was Patricia's intention that AGE hold the coins until Patricia deemed the price to sell them acceptable to her, at which time AGE would purchase the coins from Patricia, at her direction, at an agreed-upon price.[1] AGE is in the business of buying and selling precious metals.

10. On March 19, 2021, Patricia wrote to Matt Warden, a senior account manager at AGE, by email saying, "Matt, I guess it might be time to sell the gold soon," and forwarded an email detailing Patricia's recent cancer diagnosis, along with her prognosis and treatment options. Matt responded to Patricia's email on March 22, 2021, including providing her an inventory of the coins AGE was holding and their approximate value at the time, which was $322,010. AGE offered to buy the 670 Gold Coins and wire the funds to Patricia. On March 23, 2021, Matt wrote again to Patricia asking if she wanted to sell the coins. Patricia responded that she or her sister Toni [Antoinette Lasky] would let him know when she was ready. A copy of this email exchange is attached as Exhibit B.

---

[1] Patricia had originally purchased the Swiss gold 20 Franc coins from AGE on July 27, 2006; Patricia acquired the gold Krugerrands from another source.

11. On May 5, 2021, Matt and Patricia spoke by telephone. Matt confirmed that AGE was still in possession of the 670 Gold Coins, and again offered to purchase them if Patricia wanted to sell them. Matt informed Patricia that if she did not want to sell the coins that AGE wished to return them to her as soon as possible. Patricia mentioned that she wanted her children to get her gold coins. Matt suggested that Patricia consult with an attorney about her estate planning. There were also discussions about Patricia perhaps providing to AGE a copy of a power of attorney. Matt followed up their conversation with the email attached as <u>Exhibit C</u>. AGE did not hear back from Patricia, or anyone on her behalf, after these discussions on May 5, 2021.

12. On September 23, 2021, Matt wrote to Patricia by email asking for an update about how Patricia was doing and asked again if AGE could buy the 670 Gold Coins or return them to her. That email is attached as <u>Exhibit D</u>.

13. Patricia died the following day. On September 25, 2021, Matt received a call from Shaolin, informing Matt that Patricia had died.

14. On September 30, 2021 and October 1, 2021, Matt and Shaolin exchanged emails about the documentation AGE would require in order to release the 670 Gold Coins in its possession. That email thread is attached as <u>Exhibit E</u>. Matt made it clear that AGE would require a death certificate and Letters of Testamentary [sic] issued to the executor of Patricia's estate – Shaolin having told Matt in this exchange that there was a will.

15. On October 7, 2021, Shaolin wrote to Matt telling him that she was in possession of Patricia's death certificate and a copy of a revocable trust set up by Patricia, and that she would be forwarding those documents to AGE. Matt replied that AGE would confirm receipt of the

documents when they arrived. A copy of this email exchange is attached as <u>Exhibit F</u>. This was the first time anyone at AGE had heard that Patricia may have established a trust of any kind.

16. Later in the day on October 7, 2021, a group of documents were sent by email to Matt from a UPS location in Arizona. The group consisted of selected pages of a document purporting to be Patricia's will dated July 12, 2004; selected pages from a document purporting to be a revocable trust created by Patricia on January 17, 2006, subsequent to the date her will was executed, plus an amendment to the trust, and a trust certificate; and a copy of Patricia's death certificate. This email and the accompanying documents are attached as <u>Exhibit G</u>.

17. On October 19, 2021, Jason McLerran, the director of operations at AGE, spoke by telephone with Shaolin. He told Shaolin that the documents sent by UPS to Matt were incomplete and were otherwise insufficient for AGE to release the 670 Gold Coins to her. Shaolin told Jason that the pages she sent were all he needed to see, according to her attorney. Jason told Shaolin to send complete documents for his review. Jason followed up their conversation with the email attached hereto as <u>Exhibit H</u>.

18. On October 26, 2021, Jason received an email from the same UPS Store in Arizona, forwarding additional documentation. This email and the accompanying documents are attached as <u>Exhibit I</u>. Included in this group of documents were another copy of Patricia's death certificate; an apparently complete copy of the Patricia Griffin Revocable Trust, plus the amendment to the trust, and the trust certificate; three documents purporting to be declinations to serve as successor trustee executed by the three individuals named ahead of Shaolin to serve in that role; and an acceptance of appointment as successor trustee executed by Shaolin. Also included were declinations to serve as the personal representative of Patricia's estate, in favor

of Shaolin, executed by the same three individuals. A complete copy of the will was not included, however. Also not included were letters of administration of the estate, for Shaolin or anyone else. Also not included was any evidence that the 670 Gold Coins were ever transferred to the trustee of Patricia's trust, or were otherwise trust property.[2]

19. After reviewing the documents received on October 26, 2021, and consulting with AGE's attorneys, Jason sent an email to Shaolin on November 1, 2021, telling her that the documents she had provided would not be sufficient to permit AGE to turn over the 670 Gold Coins to her, and reiterating that AGE would need to see letters testamentary before doing so. This email is attached as Exhibit J.

20. On November 3, 2021, Jason spoke with Shaolin by telephone. Jason told Shaolin that the documents she had provided did not change AGE's position that they would only release the gold coins to a person designated by a court as the official representative of Patricia's estate. They discussed the absence of proof that the coins were ever made part of Patricia's trust, and for that reason AGE could not release them to a successor trustee of that trust. After that conversation, Jason received an email from Shaolin forwarding another copy of the addendum to the will that mentions the gold coins. Jason replied telling Shaolin that her mother sent the gold to AGE in her personal name and had not mentioned that the gold was in the trust or provided any evidence that it was, and, reminding Shaolin that AGE would need letters

---

[2] The will excerpts provided earlier to AGE specifically list the gold coins as estate property to be distributed to beneficiaries under the will. Nothing in the trust document contradicts or changes this, and no other documentation which would potentially demonstrate that the 670 Gold Coins are trust property has ever been provided to AGE.

testamentary from an executor of the estate to release the gold. This email exchange is attached as Exhibit K.

21. On November 9, 2021, Jason received an email from an attorney in Florida representing Shaolin named Maureen O'Brien, who requested that AGE return Patricia's coins to Shaolin. Jason replied that AGE, after consulting with its attorney, would only turn over the gold to an executor of Patricia's estate upon the presentation of letters testamentary. Maureen asked for the name of AGE's attorney, which Jason provided. These emails are attached as Exhibit L.

22. On November 16, 2021, Maureen O'Brien spoke with AGE's attorney, who again told Maureen why AGE needed to deal with the authorized representative of Patricia's estate. Maureen followed up that conversation with an email requesting documentation from AGE supporting its position, and with a second request by email the following day. AGE's attorney wrote back saying there would be no further communications about the gold coins except through a duly appointed representative of the estate with letters of administration. These emails are attached as Exhibit M. Neither AGE nor its counsel has received any further communications from Maureen O'Brien.

23. On December 10, 2021, Matt received the abusive and insulting email from Shaolin attached as Exhibit N.

24. AGE does not know why Shaolin will not file her mother's will for probate and obtain letters of administration, considering that over $300,000 worth of gold is at hand waiting to be turned over by AGE to any person authorized by a court of competent jurisdiction to accept it. Regardless of why this has not happened, there is too much at stake for AGE to give the gold to anyone except an authorized personal representative of Patricia's estate. AGE cannot subject

itself to liability from any number of potential claimants for not disposing of Patricia's 670 Gold Coins in a prudent and lawful manner.

25. Thus far, claim has been made to the 670 Gold Coins first by Shaolin as the purported executor of her mother's estate, alleging that under Arizona law all she had to do was provide a copy of the will (which she has never done) and a death certificate. See Exhibit E. This is incorrect as a matter of law. Wills are no more self-effectuating in Arizona than they are in Texas. A will must be admitted to probate and letters of administration issued in Arizona just like in Texas. The addendum to the will lists Shaolin and/or Bahati as the devisees of the gold coins. Giving the 670 Gold Coins to Shaolin if she does not have letters of administration exposes AGE to potential claims by Bahati, not to mention potential claims by creditors of Patricia's estate and the heirs at law of Patricia in the event Patricia's will is denied probate. Next, Shaolin has demanded the gold as the putative successor trustee of her mother's trust (see Exhibits F – I) but has provided no evidence that the 670 Gold Coins are trust property. In addition, the trust property is to be distributed in various percentages to numerous distributees, as compared to just Shaolin and Bahati under the will. In the absence of clear evidence that the 670 Gold Coins are trust property, which has not been provided, AGE cannot make the determination to deliver the gold coins to Shaolin as the putative successor trustee and expose itself to liability to various potential claimants by doing so.

26. The Public Fiduciary is charged under Arizona law to be the personal representative of a decedent's estate when there is no person willing or able to serve, and when there are resources available to make it possible for the Public Fiduciary to administer the probate assets of the estate, Ariz. Rev. Stat. 14-5602, factors which appear to be present here. If the 670 Gold Coins

are in fact the property of Patricia's estate (as opposed to her trust), and Shaolin or another person is unwilling to come forward and file Patricia's will for probate and assume the responsibility of being the personal representative of her estate, then the Public Fiduciary could step into this role. The Public Fiduciary is named as a Defendant in this lawsuit for this purpose, to potentially protect the rights of creditors, heirs and unknown heirs, and to promote a robust and fulsome controversy between the defendants-in-interpleader in this action.

27. Because AGE cannot determine factually or legally who is entitled to the 670 gold coins, and by reason of the actual or potential claims against AGE by adverse claimants, AGE is or may be exposed to multiple liability.

28. AGE is ready, willing, and able to transfer the precious metals at issue to any duly-qualified personal representative of Patricia's estate, or to whomever any court of competent jurisdiction might order, but no action has been taken by Patricia's heirs, devisees, or trust beneficiaries to institute legal proceedings to accomplish this.

29. As a mere stakeholder, AGE has no interest (except to recover its attorneys' fees and cost of this action) in the 670 Gold Coins and respectfully requests that this Court determine to whom the property should be transferred.

30. AGE accordingly will deliver to the Clerk of the Court for deposit into the Registry of the Court for disbursement in accordance with the judgment of this Court the 670 Gold Coins or retain possession of them pursuant to further orders of this Court, whichever the Court may prefer. In the alternative, at the Court's direction AGE could sell the 670 Gold Coins at a fair market price and deliver the proceeds of the sale in cash for deposit into the Registry of the Court.

31. AGE has not brought this Complaint in Interpleader at the request of any adverse claimants. There is no fraud or collusion between AGE and any current or potential claimant. AGE brings this Complaint in Interpleader of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

32. AGE seeks judgment for its attorneys' fees and cost of suit, to be paid out of the interpleaded property, either in cash or a cash-equivalent amount in gold coinage to be determined by the Court.

**WHEREFORE,** AGE requests that the Court render orders/judgment as follows:

(a) requiring the defendants-in-interpleader to answer this Complaint and to demonstrate to this Court's satisfaction, if possible, their potential claims to the 670 Gold Coins;

(b) including a determination by this Court to whom the 670 Gold Coins should be paid;

(c) permitting AGE to deposit the 670 Gold Coins into the Registry of this Court or as this Court otherwise directs, to be subject to the order of this Court and to be paid out as this Court shall direct;

(d) discharging AGE from any and all liability to any adverse claimants relating in any way to the 670 Gold Coins upon deposit of the property into the Registry of this Court or as otherwise directed by this Court;

(e) enjoining any adverse claimants from instituting or prosecuting any proceeding against AGE or its owners, officers, directors, employees, attorneys, or agents in any state or United States court affecting the 670 Gold Coins;

(f) dismissing AGE from this action with prejudice;

(g) awarding AGE its attorneys' fees and costs in their entirety and directing that these amounts be paid out of the property in the Registry of the Court, in cash or a cash-equivalent in gold coinage; and

(h) awarding AGE any other and further relief that this Court deems just and proper.

Dated: January 19, 2022.

Respectfully submitted,

By: */s/Terence L. Thompson*
    _____
    Terence L. Thompson
    Texas Bar No. 19943700
    tthompson@fjt-law.com

FLAHERTY JONES THOMPSON PLLC
7800 N. Mopac, Suite 101
Austin, TX  78759
(512) 407-9871 [telephone]
(512) 872-5085 [fax]

**Counsel for Plaintiff**
**American Gold Exchange, Inc.**